UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TAMARA MOORE | CIVIL ACTION |
| VERSUS | NO. 14-2076 |
| UNITED STATES OF AMERICA AND MEGAN BRENNAN, POSTMASTER GENERAL. | SECTION A(3) |

## ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 91)** filed by The United States of America and Megan Brennan.[1] Plaintiff Tamara Moore has filed an opposition along with a **Motion to File Exhibits (Rec. Doc. 112)**, a **Motion to File Supplement (Rec. Doc. 125)**, and **Motion to File Second Supplement (Rec. Doc. 126)**, which the Government has advised the Court are opposed. For the reasons that follow, the motion for summary judgment is GRANTED.

**I.   Background**

Plaintiff Tamara Moore has filed suit against her employer, the United States Postal Service for racial, gender and Family Medical Leave Act ("FMLA") discrimination, as well as violations of the Fair Labor Standards Act ("FLSA") (failure to pay overtime). The Complaint comprises 22 pages of detailed grievances surrounding Moore's

---

[1] Plaintiff originally identified Patrick Donahoe as the Postmaster General but Mr. Donahoe has retired from service. Megan Brennan, the current Postmaster General, has been substituted accordingly.

employment at the Gretna, Louisiana postal location but nearly all complaints revolve around Moore's difficulties with her female supervisor, Valtreana Griffin. Moore and Griffin are the same race and gender but Moore describes herself as a dark-skinned African-American and she describes Griffin as a light-skinned African-American. On May 5, 2014, Moore fell and was injured while on duty in her United States Postal Service ("USPS") employment. She can no longer carry mail. This injury is not directly at issue in this action. But Moore's cause of action for Title VII gender and race discrimination is actually separated into two separate claims – one encompassing conduct that allegedly occurred before the May 5, 2014 injury (July 9, 2013 through February 25, 2014) and one encompassing conduct that allegedly occurred after the injury (August 19, 2014 through January 3, 2015). Moore's FLSA claim for failure to pay overtime wages spans April 2013 through September 12, 2013.

Defendant moves for summary judgment on all claims.[2]

## II.   Discussion

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to

---

[2] In her opening line of the opposition to the motion for summary judgment Plaintiff observes that Defendant's motion is "somewhat unconventionally structured and confusing." (Rec. Doc. 104). The Court finds this observation to be unfair and ironic given that Plaintiff has clearly struggled to craft a legal theory to fit the facts of her case. Plaintiff did not suffer an adverse employment action so she cannot assert a disparate treatment claim even though the overwhelming majority of the evidence that she seeks to rely upon is comparator evidence. Without an adverse employment action Plaintiff can only resort to a Title VII hostile work environment claim, which she has tried to do, but she muddies the water by attempting to meld an FMLA claim, which does not rise to the level of being actionable on its own, into her Title VII hostile work environment claim. Thus, Defendant undoubtedly was forced to devise a method to appropriately address Moore's claims. In that same vein, the Court's own ruling reflects a reframing of the issues in this case to comply with the controlling law that Moore cannot escape via artful pleading.

any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (*citing* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (*citing SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

When faced with a well-supported motion for summary judgment, Rule 56 places the burden on the non-movant to designate the specific facts in the record that create genuine issues precluding summary judgment. *Jones .v Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). The district court has no duty to survey the entire record in search of evidence to support a non-movant's position.[3] *Id.* (citing *Forsyth v.*

---

[3] The Court stresses this last point because Plaintiff originally filed no exhibits with her opposition to the motion for summary judgment. Plaintiff then moved for leave to file exhibits, which the Court is granting as part of this ruling, but the significance of some of those exhibits is not apparent to the Court. The exhibits are a conglomeration of deposition excerpts, and hearsay snippets of investigative reports. The manner in which the case is pleaded does not help because Plaintiff's Complaint is overburdened with non-actionable minutia reflecting Plaintiff's day to day dissatisfaction with her employment situation. And her 43 pages of "Controverting Facts" (Rec. Doc. 115) contain so much extraneous and irrelevant material that if a genuine and material issue of fact exists somewhere in this case, Plaintiff has wholly failed to adequately identify it for the Court.

*Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

### *Count I – Hostile Work Environment*

Moore's first cause of action is for a hostile work environment due to gender and race discrimination at the hands of Griffin, a supervisor of the same race and gender.[4] Moore has split her cause of action for hostile work environment into two separate counts – one for hostile work environment prior to her May 5, 2014 injury and one for hostile work environment post-injury, after she returned to work on restricted duty on August 19, 2004. Regardless of how Moore attempts to divide this cause of action, she fails to create an issue of fact as to unlawful discrimination.

To establish a claim of hostile work environment under Title VII a plaintiff must prove that she 1) belongs to a protected group; 2) was subjected to unwelcome harassment; 3) the harassment complained of was based on a protected trait such as race, color, or gender; 4) the harassment complained of affected a term, condition, or

---

[4] Defendant stresses that Moore and Griffin are both the same race but Moore's Title VII race discrimination claim is actually one for color discrimination, which is recognized by courts as a form of race discrimination. *See Jones v. Jefferson Parish*, No. 12-2191, 2013 WL 871539, at *5 (E.D. La. Mar. 8, 2013) (noting various out-of-circuit cases)). In fact, discrimination based on color is specifically listed as an unlawful employment practice in the Title VII statutory scheme. *See* 42 U.S.C. § 2000e-2 (a). Thus, color is a protected trait under Title VII.

Moore complains that Defendant split the hostile work environment analysis into separate Title VII and FMLA components, ignoring that multiple types of harassment can be aggregated. (Rec. Doc. 104, Opposition at 3). Plaintiff fails to recognize that a hostile work environment claim is a creature of Title VII, not the FMLA. The out-of-circuit *Smith* case that Plaintiff cites involved sexual and racial hostility, both being types of discrimination actionable under Title VII. *Smith v. Northwest Fin. Accept., Inc.*, 129 F.3d 1408 (10th Cir. 1997). FMLA status is not a protected trait under Title VII and the Court is aware of no case that recognizes a hostile work environment claim under the FMLA. Therefore, the viability of Moore's hostile work environment claim depends on evidence of color and gender discrimination, two types of discrimination that she can aggregate. But aggregation does not help Moore because her allegations of gender discrimination are wholly unsupported and in fact are contradicted by the record.

privilege of employment; 5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). Harassment affects a "term, condition, or privilege of employment" if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* Workplace conduct is not measured in isolation. *Id.* In order to deem a work environment sufficiently hostile so as to support a claim under Title VII, "all of the circumstances must be taken into consideration." *Id.* This includes "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* To be actionable, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).

    Moore is African-American and she is female so she belongs to two protected groups. Moore was subjected to unwelcome "harassment" by Griffin. The pivotal question is whether Moore has produced sufficient evidence to create an issue of fact as to whether the harassment was based on a protected trait such as color and/or gender. Harassing incidents with no clear connection to race or gender, no matter how offensive, are not probative of a Title VII hostile work environment. *Hernandez*, 670 F.3d

at 654. In other words, Title VII does not provide a cause of action for work environments that are simply "hostile."[5]

To be sure, the workplace at the Gretna post office was one riddled with animosity insofar as Moore and Griffin were concerned. Of course the hostility and animosity was not directed at Moore to the exclusion of others. The employees at the Gretna USPS office were predominately African-American and Moore concedes that several employees characterized Griffin as being rude, unpleasant, and overbearing to many people, including other African-Americans both male and female, regardless of skin tone. Griffin had even been accused of committing incidents of workplace violence against subordinates. (Rec. Doc. 112-4, Hawkins deposition at 11).

In support of her claim that Griffin exhibited extreme color animus toward her, Moore points out that Griffin referred to herself as "Boozy Mulatto," an accusation that Griffin denied in her deposition. Moore also directs the Court's attention to the deposition testimony of Kevin Hawkins and Carl Jenkins both of whom were affiliated with the employees' union. In his role as a union official Hawkins had heard about an incident involving a letter carrier named Geisha Hensley, who was dark-skinned. Hawkins recalled that Griffin allegedly made a comment about a "black monkey," or "something to that effect" sometime before 2013. (Rec. Doc. 112-4 at 11). When asked at this deposition if Griffin differentiated in the way she managed her employees based upon color, Hawkins responded, "Well, now that you mention that, yes. I probably would say so." (*Id.* at 12). Hawkins then recited examples of times when he believed that

---

[5] Defendant's motion challenges primarily the third and fourth elements of a Title VII hostile work environment claim. But the only element that Defendant expressly concedes is the first element pertaining to Moore's membership in a protected group.

Griffin exhibited favoritism toward lighter-skinned females and some males too. (*Id.* at 17-18). Hawkins had witnessed Griffin rolling her eyes at Moore, using a nasty tone of voice toward Moore, and talking to her in a condescending tone. (*Id.* 21-25). When asked whether Griffin's dislike of Moore was based on her darker skin color, Hawkins agreed with the suggestion because he had never seen Griffin mistreat lighter-skinned women. (*Id.* at 24). Hawkins believed that other workers at the location had complained (like Moore did) of having their routes observed but he was not certain about that. (*Id.* at 30).

      Carl B. Jenkins, a union steward, testified as to the negative interactions that he had observed between Moore and Griffin. (Rec. Doc. 112-4, Jenkins deposition at 10). Jenkins also confirmed that Moore would play favorites at work. Jenkins confirmed that Moore had played favorites with some of her subordinates, including some "bright-skinned" ones. (*Id.* at 8-9). Jenkins confirmed that he had also seen Moore play favorites with dark-skinned persons. (*Id.* at 9).

      Moore explains in her opposition that she has both direct evidence of Griffin's color animus and comparative color evidence in the form of disparate treatment. Given that Moore's claim is for a hostile work environment which requires a showing that raced-based harassment was so severe or pervasive so as to alter the conditions of Moore's employment, direct evidence of racial animus is crucial to Moore's case. But all that Moore can point to are a few discrete comments that Griffin made to and about two *other employees* (Parker and Hensley) about their hair. (Plaintiff's SCFs 28 & 29). Moore's only other direct evidence is that Griffin reacted negatively when yet *another* dark-skinned employee (Patton) attempted to hug her. (Plaintiff's SCF 30). But nothing

suggests that this incident, *which again involved another employee not Moore*, derived from racial animus. This "direct evidence" falls woefully short of what the jurisprudence requires for Moore to establish a hostile work environment claim.[6]

And Moore can garner no help from her alleged incidents of disparate treatment. Assuming arguendo that comparator evidence can be probative of a hostile work environment, none of the litany of incidents that Moore complains about — whether pertaining to medical excuses, use of leave, breaks, or schedule changes — are probative of a work environment charged with racial animus.[7] Simply, a few stray remarks directed at other employees does not create an issue of fact that any harassment directed at Moore — harassment with no obvious nexus whatsoever to a protected trait — was based on race, color, or gender.

Finally, in the absence of incidents sufficiently connected to race or gender animus, Moore cannot demonstrate the sin qua non of a Title VII hostile work

---

[6] Moore complains that Griffin had at times rolled her eyes at her in a disrespectful and dismissive manner. Under certain circumstances non-verbal conduct may be relevant to racial animus, *see Khalfani v. Balfour Beatty Comm.*, 535 Fed. Appx.363, 365-66 (5th Cir. 2014) (unpublished), but in this case there is absolutely nothing to connect Griffin's rude behavior, which apparently was directed at many of her subordinates, to racial animus.

[7] Comparator evidence derived from post-lawsuit discovery is not probative of Moore being subjected to a discriminatory work environment.
The Court notes additional problems with Moore's purported evidence of disparate treatment. As Defendant notes, comparator evidence requires individuals who are "similarly situated," and who receive differing treatment under "nearly identical circumstances." *Lee v. Kansas City So. Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009) (citing *Little v. Rep. Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)). Moore points to no specific evidence that meets this standard. And adding to the difficulty of using comparator evidence in this case is the obvious subjective color component in Moore's characterization of her co-workers' skin tones. The majority of the employees at the Gretna location were African-American. And while Moore may feel confident placing herself and Griffin on opposite ends of the skin-color continuum, the record in this case includes descriptions such as fair-complected, caramel-colored, bright-skinned, dark-skinned, light-skinned, and "the color of Michelle Obama."

environment claim — that gender and/or race discrimination was so severe or pervasive so as to affect a term, condition, or privilege of employment. Defendant is entitled to judgment as a matter of law on Moore's hostile work environment claim.

### *Retaliation for EEOC Activity*

For a retaliation claim the plaintiff must establish a prima facie case of retaliation by showing that 1) she participated in an activity protected under the statute; 2) her employer took an adverse employment action against her; and 3) a causal connection exists between the protected activity and the adverse action. *Feist v. La. Dep't of Justice*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007)). If the plaintiff makes a prima facie showing of retaliation, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. *Id.* (quoting *LeMaire v. Louisiana*, 480 F.3d 383, 388-89 (5th Cir. 2007)). Finally, the burden shifts back to the plaintiff to prove that the employer's proffered reasons are a pretext for retaliation. *Id.* The employee meets this burden by showing that the adverse action would not have occurred "but for" the employer's retaliatory motive. *Id.* (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)).

Defendant points out that Moore cannot state a prima facie case of retaliation because she did not suffer an adverse employment action. Moore points to no such adverse employment action in her opposition, instead resorting to a lengthy recitation of what Defendant correctly characterizes as "gripes" that are not actionable. Defendant is entitled to judgment as a matter of law on Moore's retaliation claim.[8]

---

[8] A retaliation claim under the FMLA likewise requires an adverse employment action. *See Mauder v. Metro. Transit Auth.*, 446 F.3d 574, 583 (5th Cir. 2006). So to the extent that Moore's retaliation claim is grounded on her exercise of FMLA rights, Defendant is also entitled to judgment as a matter of law on that claim.

*Payment of Overtime Wages*

Count 3 of Moore's complaint pertains to failure to pay overtime from April 2013 through September 12, 2013. Moore estimates that she worked 10-18 overtime hours each week during this timeframe but was not paid. (Rec. Doc. 36, SSAC ¶¶ 146, 147).

Defendant argues that Moore has wholly failed to support this claim, which is non-specific as to dates and times. In support of its motion, Defendant has submitted the declaration of Genise I. Slayton, District Finance Manager for the Louisiana District in New Orleans, Louisiana. (Rec. Doc. 91-18). Ms. Slayton has submitted Moore's pertinent personnel records and can find no pay anomalies to support Moore's claim for failure to pay overtime.

The Court has reviewed Moore's arguments in opposition and her "Controverting Facts" but they do not help Moore's case. If anything they suggest that Griffin often accommodated Moore's childcare schedule by allowing her to clock-out early to pick up her child and then return to work to complete her day. Most disturbing to the Court, however, is Moore's contention that she could not effectively oppose Defendant's motion as to the overtime claim because of Defendant's refusal to produce her "Employee Everything Report." (Rec. Doc. 104 at 24, filed June 21, 2016). Defendant has brought to the Court's attention in its Reply that this contention is meritless because the report was filed into the record on May 31, 2016 as an attachment to Ms. Slayton's declaration. (Rec. Doc. 91-18). The Court agrees. Defendant is entitled to judgment as a matter of law on Moore's overtime wage claim.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to File Exhibits (Rec. Doc. 112) is GRANTED**;

**IT IS FURTHER ORDERED** that the **Motion to File Supplement (Rec. Doc. 125)**, and **Motion to File Second Supplement (Rec. Doc. 126) are DENIED**;

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 91)** filed by The United States of America and Megan Brennan are **GRANTED** and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

December 6, 2016

_____
JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE